# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 11 |
| | : |
| 23S23 CONSTRUCTION, INC. | : |
|     DEBTOR(S) | : BANKRUPTCY NO. 09-12652 SR |
| | |
| NATIONAL GLASS AND METAL COMPANY, INC., | : |
| D'ANDREA BROTHERS CONCRETE COMPANY, INC., | : |
| B.V.F. CONSTRUCTION CO., INC., AND | : |
| HUNTER ROBERTS CONSTRUCTION GROUP, INC. | : |
|     PLAINTIFFS | : |
|     V. | : |
| AMALGAMATED BANK, 23S23 CONSTRUCTION INC., | : |
| CARRIAGE HOUSE CONDOMINIUMS L.P., | : |
| CARRIAGE HOUSE CONDOMINIUMS GP, L.P., | : |
| TURCHI, INC., AND JOHN J. TURCHI, JR., | : |
|     DEFENDANTS | : |
| AND | : |
| 23S23 CONSTRUCTION INC., | : |
| CARRIAGE HOUSE CONDOMINIUMS L.P., | : |
|     THIRD PARTY PLAINTIFFS | : |
|     VS. | : |
| HUNTER ROBERTS CONSTRUCTION GROUP, LLC | : |
|     THIRD PARTY DEFENDANT | : ADVS. NO. 09-120 |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

**Introduction**

    Before the Court is the motion ("Motion") of Plaintiff, B.V.F. Construction Co. ("Plaintiff"), for leave to amend its Second Amended Complaint to join Amalgamated Bank, as Trustee of Longview Ultra I Construction Loan investment Fund , and Amalgamated Bank (collectively referred to as "Amalgamated Bank") as additional

defendants in this adversary proceeding.[1]  Plaintiff was a carpenter subcontractor on three separate construction projects (the "Projects") for which Amalgamated Bank allegedly provided construction loans pursuant to written agreements that were substantially the same.   Plaintiff contends it is a third party beneficiary of the agreements and that Amalgamated Bank has a contractual duty to ensure that Plaintiff was paid in full for its work on each Project.  Amalgamated Bank opposes the Motion, contending that it should be denied as futile because Plaintiff's claim that it was a third party beneficiary of the written agreements is without merit.  Following a hearing on the Motion, the Court took the matter under advisement.  Upon consideration, the Motion shall be denied.

**Background**

The Projects are located in Philadelphia, Pennsylvania, at the following addresses: (1) 400 Walnut Street; (2) 1920-34 Chestnut Street; and (3) 23 S. 23rd Street.  Motion ¶2.  Plaintiff allegedly performed its work on each of the Projects and Amalgamated Bank allegedly released construction loan proceeds to the borrower of the construction loans to pay Plaintiff for its work.  *See Motion ¶¶32; see also Third*

---

[1] In the response in opposition to the Motion, counsel indicates that Amalgamated Bank as Trustee for Long View Ultra Construction Loan Investment Fund is the only party which plaintiff should be seeking to join as an additional defendant and that Amalgamated Bank was incorrectly named.  *See Defendant, Amalgamated Bank as Trustee for Long View Ultra Construction Loan Investment Fund Incorrectly Named as Amalgamated Bank's Response in Opposition to B.V.F. Construction Co., Inc.'s Motion for Leave to Amend its Second Amended Complaint* at 1-2.  For purposes of resolving the Motion, the Court shall simply refer to Amalgamated Bank as Trustee for Long View Ultra Construction Loan Investment Fund and/or Amalgamated Bank as "Amalgamated Bank."

*Amended Complaint ¶¶36-40 (attached as Exhibit A to the Motion).*  However, Plaintiff was not paid for all of its work.  *Motion ¶33; see also Third Amended Complaint  ¶40.*

Through discovery, Plaintiff obtained the Construction Loan Agreement (the "Agreement") between Amalgamated Bank, as Trustee of Longview Ultra I Construction Loan investment Fund ("Amalagated Bank Trustee"), and Carriage House Condominiums, L.P. ("Carriage House"), for the construction project located at 23 S. 23rd Street.  *See Agreement (attached as Exhibit F to the Motion).*  Plaintiff relies paragraphs 3.6 and 6.2 of the Agreement for its contention that it is a third party beneficiary thereof.  Motion ¶¶23-25.

Paragraph 3.6 of the Agreement provides in part:

> 3.6  Use of Proceeds
>
> (a) Borrower (i) shall use all Loan Proceeds advanced pursuant to the terms of this Agreement strictly in accordance with the terms of this Agreement for the construction of the Improvements and related expenditures consistent with the Project Budget; and (ii) shall not, following an Event of Default, make any distribution of Loan Proceeds or any other revenues, receipts or other proceeds generated by the Mortgaged Property to any partner of the Borrower or any party affiliated with Borrower or its partners, and shall not make any distributions of such funds which would result in the occurrence of an Event of Default . . .

Agreement ¶3.6(a).  Paragraph 6.2 of the same Agreement states, in pertinent part:

> 6.2  Right to Disbursements
>
> ... The Advances under this Agreement shall be disbursed, at Lender's option, (i) by Lender's check drawn upon Lender's disbursement account and delivered to Borrower, (ii) by depositing the amount of the disbursement to

> Borrower's account in a bank approved by Lender, or (iii) by any other method the Lender shall from time to time elect; <u>provided</u> <u>however</u> **that following the occurrence of an Event of Default, Lender may make disbursement (if at all) by direct or joint check payment to any or all persons entitled to payment for work performed on or materials delivered to or services performed in connection with the construction of the Improvements or the Loan** .... Under no circumstances shall any portion of any Advance be used for any purpose other than the payment of those costs and fees approved by Lender on the Project Budget legitimately relating to the purchase price for the Land, the cost of constructing the Improvements and the payment of the Indebtedness as set forth on the Project Budget and each line item thereon ...

Agreement ¶6.2 (bolding added). Based on the above-quoted language from paragraphs 3.6 and 6.2 of the Agreement, Plaintiff contends that a "clear inference arises that the parties to the Agreement intended Plaintiff, as a carpenter subcontractor on the project, to benefit therefrom as a third party beneficiary." *Motion ¶25*. Plaintiff believes that the construction loan agreements for the projects located at 400 Walnut Street and 1920-34 Chestnut Street are similar to the Agreement. *Motion ¶29.* Therefore, it contends that it is a third party beneficiary under those agreements as well.

Based on Plaintiff's contention that it is third party beneficiary under the agreements, Plaintiff alleges in its proposed Third Amended Complaint that Amalgmated Bank was contractually obligated "to ensure that the loan proceeds available to pay Plaintiff on each project, in fact, were paid to Plaintiff" and that the bank breached this duty, rendering it liable to Plaintiff in the amount of $2,007,534.20 plus "consequential damages arising from lost business opportunities." *See Third*

*Amended Complaint* ¶¶168-171 (attached as Exhibit A to the Motion).

## Discussion

### I.  Standard of Review

Courts are obligated to "freely" grant a party's motion for leave to amend its complaint to "when justice so requires." *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (*citing* Fed.R.Civ.P. 15).  However, leave to amend may be denied if the "amendment would be futile." *Alvin*, 227 F.3d at 121 (citing Smith v. NCAA, 139 F.3d 180, 190 (3d Cir.1998), *rev'd on other grounds*, 525 U.S. 459 (1999)).  An amendment is futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted."  *In re NAHC, Inc. Securities Litigation,* 306 F.3d 1314, 1332 (3d Cir. 2002).

### II.  Whether Plaintiff is a Third Party Beneficiary of the Agreement

Amalgamated Bank contends that Plaintiff should be denied leave to amend its complaint to join Amalgamated Bank as an additional defendant because Plaintiff is not a third party beneficiary of the Agreement.  Under Pennsylvania law, there are two tests for determining third party beneficiary status.[2]  *Two Rivers Terminal, L.P. v. Chevron USA, Inc.*, 96 F. Supp.2d 432, 450 (M.D. Pa. 2000).

### A.  First Test for Determining Third Party Beneficiary Status

---

[2] Pursuant to paragraph 9.8 of the Agreement, the Agreement is governed by the law of the Commonwealth of Pennsylvania.  *See Agreement* ¶9.8 ("This Agreement has been executed under, and shall be construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania[.]").

Under the first test, both parties to the contract must have indicated "in the contract itself that the purported third party beneficiary is a third party beneficiary." *Id.* The Pennsylvania Supreme Court set forth this test in *Scarpitti v. Weborg,* 530 Pa. 366, 609 A.2d 147 (1992), stating: "[I]n order for a third party beneficiary to have standing to recover on a contract, both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself." *Id.* at 370, 609 A.2d at 149 (*quoting Spires v. Hanover Fire Insurance Co.*, 364 Pa. 52, 57, 70 A.2d 828, 830-31 (1950)).

The first test is not met. There is no language in the Agreement which affirmatively expresses an intention by Carriage House and Amalgamated Bank to make Plaintiff or any other contractor or subcontractor a third party beneficiary thereto.

### B. Second Test for Determining Third Party Beneficiary Status

The second test, which applies when a contract does not expressly state that the third party is intended to be a beneficiary, contains two parts. *Burks v. Federal Insurance Company*, 883 A.2d 1086, 1088 (Pa. Super. 2005). First, the "recognition of the beneficiary's right must be "'appropriate to effectuate the intentions of the parties[.]'" *Guy v. Liederbach*, 501 Pa. 47, 60, 459 A.2d 744, 751 (1983). Second, "the performance must 'satisfy an obligation of the promisee to pay money to the beneficiary' or 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" *Id.* This test is based on the Restatement (Second) of Contracts § 302 (1979) which states:

6

§ 302. Intended and Incidental Beneficiaries

(1) Unless otherwise agreed between promisor and promisee,[3] a

---

[3] The "[u]nless otherwise agreed between promisor and promisee" language of §302 of the Restatement (Second) of Contracts recognizes the right of contracting parties to exclude third parties from invoking the benefits of their contract by specifically stating that the contract "is not intended to create third party beneficiaries at all." *Tredennick v. Bone*, 647 F. Supp.2d 495, 498-99 (W.D. Pa. 2007). If the parties to a contract include a provision in the contract specifically stating that the contract is not for the benefit of and not intended to be enforceable by any third party, they have "otherwise agreed" that there are no third party beneficiaries to the contract. *See Villanova, Ltd. V. Convergys,* 2001 WL 868662, at *2 (E.D. Pa. April 24, 2001) (ruling that plaintiff could not successfully claim to be a third party beneficiary of a contract since the parties to the contract "explicitly provided that there were to be no third party beneficiaries.").

Based on paragraph 6.6 of the Agreement, Amalgamated Bank contends that Carriage House and it "otherwise agreed" that there would be no third party beneficiaries to the Agreement. In support of this contention, Amalgamated Bank cites *Twin County Construction Company, Inc. v. Signet Bank/Maryland*, 1995 WL 733392, at *3 (E.D. Pa. Dec. 12, 1995), wherein the parties specifically included a provision in their loan agreement precluding anyone who was not a party to the agreement from having any benefit thereunder as a third party beneficiary. The provision at issue stated:

> *No Third Party Beneficiary Rights.* No person not a party to this AGREEMENT shall have any benefit hereunder nor have third party beneficiary rights as a result of this AGREEMENT or any other LOAN DOCUMENTS, nor shall any party be entitled to rely on any actions or inactions of the LENDER or the LENDER'S agents, all of which are done for the sole benefit and protection of the LENDER.

*Id.* In contrast to the provision in the loan agreement in *Twin County Construction Company, Inc.*, paragraph 6.6 of the Agreement in the instant matter provides:

> 6.6    Third Party Beneficiaries. All conditions precedent to Lender's obligation to make Advances hereunder are imposed solely and exclusively for Lender's benefit. No person or entity other than Lender shall have any

(continued...)

> beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
>> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>>
>> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Guy*, 501 Pa. at 60, 459 A.2d at 751 (*quoting* Restatement (Second) of Contracts §302 (1979)).

The paragraphs to which Plaintiff cites from the Agreement to support its claim that it is a third party beneficiary of the Agreement provide that Amalgamated Bank has

---

[3](...continued)
> standing to require satisfaction of such conditions, or be entitled to assume that Lender will refuse to make Advances absent strict compliance therewith, and any or all of such conditions may be freely waived (in whole or in part) by Lender at any time or times.

Agreement ¶6.6. This provision is clearly more narrow than the provision at issue in *Twin County Construction Company, Inc.*. While Amalgamated Bank would have the Court interpret paragraph 6.6 as stating that there are no third party beneficiaries of the Agreement, that is not what paragraph 6.6 of the Agreement provides. Rather, it states that the Lender and only the Lender is entitled to impose or waive the conditions precedent to its obligation to make Advances under the Agreement. Consequently, the Court rejects Amalgamated Bank's contention that the language "[u]nless otherwise agreed between the promisor and promisee" in §301(1) of the Restatement (Second) of Contracts is applicable here.

the *option*, upon an Event of Default,[4] to make payments directly or by joint  joint check to "any or all persons entitled to payment for work performed on or materials delivered to or services performed in connection with the construction of the Improvements or the Loan." Agreement ¶ 6.2.  The language in paragraph 6.2 does not *obligate* the bank to make any payments.  Indeed, the parties' use of permissive rather than mandatory language in paragraph 6.2 undercuts the Plaintiff's argument that Amalgamated Bank or the borrower intended for Plaintiff to be a third party beneficiary of the Agreement.  The parties' language in paragraph 6.2 expresses their intent that while Amalgamated Bank is *entitled*, if it so chooses, to disperse payments after an Event of Default has occurred, it has *no obligation* whatsoever to any contractors or

---

[4] Pursuant to Article 7 of the Agreement, an "Event of Default" occurred if Carriage House failed, refused or neglected to discharge "any Obligations as and when called for ....[.]"  Agreement ¶7.5. "Obligations,"as defined by the Agreement are:

> Any and all of the covenants, warranties, representations
> and other obligations (other than to repay the indebtedness)
> made or undertaken by Borrower ... to Lender or others as
> set forth in the Security Documents, Leases, Commitment
> and all other documents now or hereafter executed by
> Borrower ....[.]

Agreement ¶1.1(z).  Under the Agreement, Carriage House had an obligation to use the Loan Proceeds "strictly in accordance with the terms" of the Agreement "for the construction of the Improvements and related expenditures consistent with the Project Budget."  Agreement ¶3.6(a).  Plaintiff has alleged that it did not.  Therefore, an Event of Default occurred.

Upon the occurrence of an Event of Default, Amalgamated Bank's obligations, if any, under the Agreement, "including specifically any obligation to advance funds" immediately ceased.  Agreement ¶8.2 As Therefore, any obligation by Amalgamated Bank to advance funds under the Agreement terminated when Carriage House defaulted thereunder.

9

subcontractor to do so and did not intend for them to benefit from any promised performance. Thus, recognition of a right to performance in Plaintiff would be directly contrary to the parties' intention as set in the terms of paragraph 6.2 of the Agreement. *See Burks v. Federal Insurance Company*, 883 A.2d at 1090-91 (affirming trial court's decision that person injured when she fell in bank was not a third party beneficiary of the insurance policy between the bank and its insurance company because the bank's intent "at the time of contracting ... was to procure medial payment coverage that would permit [it] to compensate an individual for bodily injury sustained on its premises if it chose to, and independent of its actual legal obligation to compensate the individual."); *BDGP, Inc. v. Independent Mortgage Co.,* 2004 WL 960013, at *4 (Pa. Comm. Pl. March 31, 2004) (rejecting plaintiff's argument that it was a third party beneficiary under a construction loan agreement because the bank knew that the plaintiff, who wasn't a signatory to the agreement, would receive benefits under it).

The aforementioned view of the Agreement, namely that the Plaintiff is an incidental beneficiary thereof and not a third party beneficiary, is supported by paragraph 5.2 of the Agreement. Under paragraph 5.2, Carriage House assigned its rights, titles and interests in any and all of its contracts with its contractors or subcontractors to Amalgamated Bank; however, as the Agreement explicitly states, Algamated Bank did not undertake any obligations under such contracts.[5] The

---

[5] Under the Agreement, the term "Contracts" means:

> Any and all contracts and agreements, written or oral, between Borrower and any Contractor, all such contracts being subject to prior approval of Lender, between any of

(continued...)

10

Agreement specifically recognizes that Carriage House's obligations under its contracts with contractors or subcontractors are solely its obligations and not the obligations of Amalgamated Bank. Paragraph 5.2 of the Agreement provides, in pertinent part:

> As additional security for the payment of the Indebtedness, Borrower hereby transfers and assigns to Lender all of Borrower's rights, titles and interests, but **not it obligations**, in, under and to the Contracts upon the following terms and conditions:
>
> * * *
>
> (b) **Neither this assignment nor any action by Lender shall constitute an assumption by Lender of any obligations under the Contracts; and Borrower shall continue to be liable for all obligations of Borrower thereunder**, Borrower hereby agreeing to perform all if obligations under the Contracts. Borrower agrees to indemnify and hold Lender harmless against and from any loss, cost, liability or expense (including, but not limited to, reasonable attorneys' fees) incurred by the Lender and resulting from any failure of the Borrower to so perform and Borrower agrees to obtain from the applicable Contractor or any other contractor or subcontractor, a consent to the assignment of such Contract contained in this Paragraph 5.2 of the Contracts in a form acceptable to Lender in its sole and absolute discretion.

Agreement ¶5.2 (emphasis added). As this provision shows, Amalgamated Bank obtained the right, title and interests of Carriage House in its contracts with contractors and subcontractors, but it did not take on any obligation(s) to the contractors or subcontractors. By specifically including in the Agreement the language in this

---

[5](...continued)
the foregoing and any subcontractor between any of the foregoing and any person or entity relating in any way to the construction of the Improvements, including the performing of labor or the furnishing of standard or specially fabricated materials in connection therewith.

Agreement ¶1.1(f).

11

provision that states that Amalgamated Bank owes no obligations to any contractors or subcontractors under any of their contracts with the borrowers, the parties clearly expressed their intent that the Agreement was not intended to impose any obligations on Amalgmated Bank vis-a-vis any of the contractors and subcontractors that Carriage House might use on the Project.  Therefore, Plaintiff is an incidental beneficiary rather than a third party beneficiary of the Agreement.  As an incidental beneficiary, Plaintiff has no rights against Amalgamated Bank under the Agreement.   See *Myers Plumbing and Heating Supply Company v. West End Federal Savings and Loan Association*, 345 Pa. Super. 559, 565, 498 A.2d 966, 969 (1985) (c*iting Restatement (Second) of Contracts* §315 (1979)).   Consequently, it would be futile to allow Plaintiff to amend its Second Amended Complaint to join Amalgamated Bank as an additional defendant.

**Summary**

Plaintiff's Motion for leave to amend its Second Amended Complaint shall be denied.  The amendment would be futile because Plaintiff is not a third party beneficiary under the Agreement.

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>February 4, 2010</u>