# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| CARRIAGE HOUSE CONDOMINIUMS, L.P. | : | BANKRUPTCY NO. 09-12647 SR |
| | : | |
| 23S23 CONSTRUCTION, INC., | : | CHAPTER 7 |
| | : | |
| DEBTORS. | : | BANKRUPTCY NO. 09-12652  SR |

---

| | | |
|---|---|---|
| NATIONAL GLASS AND METAL COMPANY, INC., | : | |
| | : | |
| PLAINTIFF, | : | |
| VS. | : | |
| | : | |
| 23S23 CONSTRUCTION, INC. | : | |
| CARRIAGE HOUSE CONDOMINIUMS L.P., | : | |
| CARRIAGE HOUSE CONDOMIUMS G.P., INC., | : | |
| TURCHI, INC., JOHN J. TURCHI, JR., AND | : | |
| AMALGAMATED BANK, | : | |
| | : | |
| DEFENDANTS, | : | ADV. NO. 09-00120 |
| VS. | : | |
| | : | |
| HUNTER ROBERTS CONSTRUCTION GROUP, INC. | : | |
| | : | |
| THIRD PARTY | : | |
| DEFENDANT. | : | |

---

| | |
|---|---|
| D'ANDREA BROTHERS CONCRETE | : |
| COMPANY, INC., | : |
| | : |
| PLAINTIFF, | : |
| VS. | : |
| | : |
| 23S23 CONSTRUCTION, INC., | : |
| CARRIAGE HOUSE CONDOMINIUMS L.P., | : |
| TURCHI, INC., AND JOHN J. TURCHI, JR., | : |
| | : |
| DEFENDANTS, | : |
| | : |

|   |   |
|---|---|
| vs. | : |
|   | : |
| HUNTER ROBERTS CONSTRUCTION GROUP, INC., | : |
|   | : |
| THIRD PARTY | : |
| DEFENDANT. | : |
|   | : |
|   | : |

---

|   |   |
|---|---|
|   | : |
| BVF CONSTRUCTION CO, INC., | : |
|   | : |
| PLAINTIFF, | : |
| vs. | : |
|   | : |
| TURCHI, INC., JOHN J. TURCHI, JR., | : |
| WALNUT CONSTRUCTION CO., WALNUT STREET, | : |
| 1930-34 ASSOCIATES, L.P. | : |
| 1930-34 CORP., 23S23 CONSTRUCTION, INC., | : |
| AND CARRIAGE HOUSE CONDOMINIUMS, L.P., | : |
|   | : |
| DEFENDANTS, | : |
| vs. | : |
|   | : |
| HUNTER ROBERTS CONSTRUCTION GROUP, INC. | : |
|   | : |
| THIRD PARTY | : |
| DEFENDANT. | : |

---

|   |   |
|---|---|
|   | : |
| 23S23 CONSTRUCTION, INC., AND | : |
| CARRIAGE HOUSE CONDOMINIUMS G.P., INC. t/a | : |
| CARRIAGE HOUSE CONDOMINIUMS, L.P., | : |
|   | : |
| PLAINTIFFS, | : |
|   | : |
| vs. | : |
|   | : |
| HUNTER ROBERTS CONSTRUCTION | : |
| GROUP, LLC., | : |
|   | : |
| DEFENDANT. | : |

---

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

**<u>Introduction</u>**.

Before the Court is the motion of non-debtor defendants, John J. Turchi, Jr. ("Turchi") and Turchi, Inc., for reconsideration ("Motion for Reconsideration") of the Order, dated February 10, 2011, denying their motion to dismiss ("Motion to Dismiss") which focused on Counts X and XI of the Third Amended Complaint of BVF Construction Co., Inc. ("BVF"). Count X, which is labeled "fraud," is asserted against Turchi and Turchi, Inc.. Count XI, which is labeled "Pierce the Corporate Veil," is asserted solely against Turchi.

A hearing on the Motion for Reconsideration was held on April 14, 2011. After the hearing, the matter was taken under advisement. Upon consideration, the Court shall deny the Motion for Reconsideration. The Court shall also take this opportunity to determine, *sua sponte,* whether to equitably remand this adversary proceeding pursuant to 28 U.S.C. § 1452(b). The Court previously raised this issue with the parties on March 3, 2001, at a status hearing held in this adversary proceeding.[1]

This adversary proceeding consists of four civil actions which were originally filed in the Court of Common Pleas of Philadelphia (the "State Court"). In three of the

---

[1] At the hearing on March 3, 2011, the Court advised the parties of its strong inclination to rule in this manner.

actions, the plaintiffs are non-debtors, namely (i) National Glass and Metal Company, Inc. ("National Glass"); (ii) D'Andrea Brothers Concrete Company, Inc. ("D'Andrea"); and (iii) BVF.  In all three of these actions (the "Non-Debtor Actions"), the non-debtor defendants include Turchi and Turchi, Inc..  The debtor defendants consist of the following two entities: (i) Carriage House Condominiums, L.P. ("Carriage House") which is a Chapter 11 debtor; and (ii) 23S23 Construction, Inc. ("23S23") which is a Chapter 7 debtor.

Based on the developments in the debtors' bankruptcy cases and the current status of the Non-Debtor Actions, it is clear that, at this point in time, the Non-Debtor Actions constitute litigation between non-debtor parties. The focus of the litigation is on the liability, if any, of non-debtor defendants, Turchi and Turchi, Inc., to the non-debtor plaintiffs. The Court, therefore, concludes that the Non-Debtor Actions should be equitably remanded so that they can proceed in the State Court where they belong.

In the fourth civil action, the debtors are the plaintiffs.  They commenced this action (the "Debtor Action") against Hunter Roberts Construction Group, Inc. ("Hunter Roberts").  In a document which Carriage House filed with the Court and distributed to its creditors, Carriage House specifically stated its intention not to pursue this litigation. Moreover, the Chapter 7 Trustee, who was appointed in the bankruptcy case of 23S23 in April of 2010, has not taken any independent action to further this litigation or to advise the Court regarding the status of 23S23's bankruptcy case.  Accordingly, the Court shall schedule a show cause hearing in the Chapter 7 bankruptcy case of 23S23

4

to determine whether there is any basis for keeping the Chapter 7 bankruptcy case

open.

**Factual Background**

As the Court noted above, this adversary proceeding consists of three Non-

Debtor Actions and the Debtor Action.  All four of these actions were filed separately in

the State Court.  *See Notice of Removal, Docket Entry No. 1.*[2] They were subsequently

consolidated and assigned to the State Court's "Commerce Court" program.  *Id.*

The thread which ties these four actions together is a project ("Project") to

construct luxury condominiums at property owned by Carriage House at 23 South 23rd

Street (the "Property").  *See Third Amended Plan for Debtor Carriage House*

*Condomimums, L.P., Bankruptcy Case No. 09-12647, Docket Entry No. 225, at pg. 11.*

Carriage House contracted with 23S23 to have it act as the "general contractor and

construction manager" of the Project.  *First Amended Disclosure Statement for Joint*

*Chapter 11 Plan of Reorganization of the Debtors Carriage House Condominiums, L.P.*

*and 23S23 Construction, Inc. ("First Amended Disclosure Statement"), Article III(A),*

*Bankruptcy Case No. 09-12647, Docket Entry No. 196.*  However, at some point during

the Project, 23S23 contracted with Hunter Roberts for it to "take over all construction

management functions of the general contractor" for the Project. *Id.*

Plaintiffs in the Non-Debtor Actions (National Glass, D'Andrea and BVF) were

---

[2] Unless otherwise noted, all citations to docket entries shall refer to docket
entries in Adversary Proceeding No. 09-120.

subcontractors who provided labor and/or materials for the Project.  They contend that

they were not paid in full for their work on the Project.   In the Non-Debtor Actions,

Carriage House and 23S23, and sometimes also Turchi and Turchi, Inc., filed third

party complaints against Hunter Roberts asserting claims for breach of contract, quasi-

contract/unjust enrichment and/or indemnification. *See Docket Entry No. 1 at 206-214,*

*383-391; 481-489.*

Notably, in its Third Amended Complaint, BVF also names as defendants other

non-debtor entities which Turchi, Inc. allegedly owned and/or in which Turchi allegedly

had an interest.  *See Third Amended Complaint, Docket Entry No. 110.*   BVF claims

that it provided labor and materials for projects of these other entities for which it was

similarly not paid in full.  *Id.*

In their Complaint in the Debtor Action, the plaintiff/debtors contend that Hunter

Roberts' failure to fulfill its contractual obligations as the general contractor of the

Project "delayed" the progress of the Project.  *See Complaint,, Docket Entry No. 13,*

*Part 18 (Exhibit D-2).*  The debtors further contend that the delay negatively impacted

sales of the condominium units in the Project because the condominium units were not

completed until after the real estate market had declined.  *Id.*

On April 9, 2009, Carriage House and 23S23 Construction each filed a Voluntary

Petition for Relief under Chapter 11 of the Bankruptcy Code.[3]  The Court subsequently

---

[3] Carriage House's bankruptcy petition was assigned Bankruptcy Case No. 09-12647, whereas 23S23's bankruptcy petition was assigned Bankruptcy Case No. 09-12652.

granted a motion for joint consolidation of their bankruptcy cases, ordering all docket

entries to be made in the Carriage House bankruptcy case.  *See Bankruptcy Case No.*

*09-12652, Docket Entry No. 26 (granting the motion for joint administration of*

*Bankruptcy Case Nos. 09-12647 and 09-12652).*

On April 16, 2009, the debtors removed the four consolidated civil actions (the

Non-Debtor Actions and the Debtor Action) from the State Court to this Court, thereby

initiating the instant adversary proceeding. *See Notice of Removal, Docket Entry No. 1.*

On the same date, the debtors also removed a civil action which Morris Black & Sons,

Inc. ("Morris Black") filed against them and Turchi, Inc.  *See Notice of Removal,*

*Adversary Proceeding 09-111, Docket Entry No. 1.*  The removal of this action (the

"Morris Black Action") initiated Adversary Proceeding No. 09-111.

On May 14, 2009, Hunter Roberts filed a motion requesting the Court to abstain

from adjudicating or, in the alternative, to remand the instant adversary proceeding to

the State Court.  *Motion of Hunter Roberts Construction Group, LLC for Abstention or,*

*in the Alternative, Remand. ("Hunter Roberts' Motion"), Docket Entry No. 7.*  The basis

of Hunter Roberts' Motion was that many of the claims in the Adversary Proceeding

were asserted by non-debtors against other non-debtors.  *See Hunter Roberts' Motion*

*¶ 1.*  On May 15, 2009, BVF joined in Robert Hunters' Motion.  *See Joinder of B.V.F.*

*Construction Co., Inc. In the Motion of Hunter Roberts Construction Group, LLC, for*

*Abstention or in the Alternative for Remand, Docket Entry No. 9.*  On May 19, 2009,

Morris Black also filed a motion for remand to the State Court.  *See Motion to Remand a Matter Previously Removed from State Court, Adversary Proceeding No. 09-111, Docket Entry No. 3.*

On July 30, 2009, the Court issued an Order denying Hunter Roberts' Motion as well as the motion for remand filed in the Morris Black Action.  *Order, dated 7/30/09, Adversary Proceeding No. 09-120, Docket Entry No. 19 & Adversary Proceeding 09-111, Docket Entry No. 8.*  In so ruling, the Court concluded that mandatory abstention did not apply in either adversary proceeding because only <u>four</u> of the factors necessary for mandatory abstention were established, namely that: (1) the claims at issue in both proceedings are based on state contract and construction law; (2) the Court has "related to" jurisdiction over the claims; (3) without the bankruptcy filing, this Court would lack jurisdiction to hear the claims; and (4) the State Court was competent to hear the claims.  *Opinion, dated July 30, 2009 ("Bankruptcy Court Opinion") at 17-18, Adversary Proceeding No. 09-120, Docket Entry No. 18 & Adversary Proceeding No. 09-111, Docket Entry No. 7.*  Insofar as the <u>fifth</u> factor, which is whether the claims in the adversary proceedings could be "timely adjudicated" in the state forum, the Court observed that the notion of timeliness in the context of a Chapter 11 bankruptcy case is an expansive one and that the Third Circuit "has explained that timeliness must be determined 'with respect to needs of the title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed.'"  *Id.*

8

*at 18 (quoting Stoe v. Flaherty*, 436 F.3d 209, 219 (3d Cir. 2006)).  Utilizing this

meaning of the term "timeliness," the Court concluded that the movants had not carried

their burden of showing that the fifth factor for mandatory abstention was met.  *Id. at*

*18-22.*  The Court also considered the request for remand based on permissive

abstention or equitable remand but opted, in the exercise of its discretion, not to

remand.  *Id. at  22-27.*  While the Court recognized that the claims at issue involve state

law and that interests of federalism (*i.e.*, comity) exist "which might, without more,

support remand," the Court ruled against sending the adversary proceedings back to

the State Court because, at that point in time, the Court was concerned that litigation of

the claims in the State Court rather than in the bankruptcy court  "could delay resolution

of" the debtors' Chapter 11 bankruptcy cases "for a long time." *Id. at 24-25.*  However,

since the Court's ruling on July 30, 2009, there have been significant developments and

changes in the debtors' bankruptcy cases which affect the issue of remand.

On August 10, 2009, the Court issued an Order fixing the bar date for filing

claims in the debtors' bankruptcy cases as September 15, 2009.  *Order, dated August*

*10, 2009, Bankruptcy Case No. 09-12647, Docket Entry No. 112.*  Only two of the non-

debtor defendants filed proofs of claim. National Glass filed a proof of claim, Claim No.

15, in the amount of $244,367.19 for "[g]oods sold, [s]ervices performed."  *See Claim*

*No. 15, Claims Register in Bankruptcy Case No. 09-12647.*  BVF filed a proof of claim,

Claim No. 24, in the amount of $1,961,446.72, for "[g]oods and services."  *See Claim*

No. 24, Claims Register in Bankruptcy Case No. 09-12647.  Significantly, D'Andrea did

not file a proof of claim against either debtor.   Both Carriage House and 23S23 listed

National Glass, BVF and D'Andrea on their Schedules as creditors holding disputed,

unliquidated, unsecured nonpriority claims.  *Schedule F, Bankruptcy Case No. 09-*

*12647, Docket Entry Nos. 55 & 58.*

On December 9, 2010, following much debtor and creditor activity which is not

relevant here, the debtors filed a disclosure statement ("Disclosure Statement") for a

joint plan of reorganization.  *Bankruptcy Case 09-12647, Docket Entry No. 172.*  A

hearing was held on the Disclosure Statement after which the debtors filed their first

amended disclosure statement ("First Amended Disclosure Statement"), again for a

joint plan of reorganization.  *Id., Docket Entry No. 196.*  On or about January 28, 2010,

an Order was issued approving the First Amended Disclosure Statement and setting

forth a procedure for voting on the debtors' proposed plan of reorganization.  *Id.,*

*Docket Entry No. 206.*

The First Amended Disclosure Statement provides the following information

regarding Carriage House: (i) it is a Delaware limited partnership; (ii) its general partner

is Carriage House Condominiums, G.P., Inc. which has a 1% interest in Carriage

House; (ii) its limited partner is Turchi who owns a 99% interest in Carriage House; and

(iv) Turchi is the president of Carriage House.   *First Amended Disclosure Statement,*

*Article II, at pg. 6.*  With regard to 23S23, the First Amended Disclosure Statement

reveals that: (i) 23S23 is a subchapter "S" corporation which is wholly owned by Turchi,

Inc., which, in turn, is wholly owned by Turchi; and (iii) Turchi is the President of 23S23.

*Id.*

The debtors' proposed plan of reorganization defined the Debtor Action against

Robert Hunter as follows:

> **Hunter Roberts Litigation** means the litigation in the Court
> of Common Pleas of Philadelphia Pennsylvania, captioned
> <u>23S23 Construction, Inc. And Carriage House
> Condominiums, L.P. vs. Hunter Roberts Construction Group,
> LLC</u>, ID 080500367, which was removed to this Court as
> Adversary Proceeding No. 09-120.

*Bankruptcy Case No. 09-12647, Docket Entry, No. 198 (First Amended Plan of*

*Reorganization for Joint Chapter 11 Debtors Carriage House Condominiums, L.P. and*

*23S23 Construction, Inc., Article I, ¶, 1.37); see also id., Docket Entry No. 216,*

*(Second Amended Plan of Reorganization for Joint Chapter 11 Debtors Carriage House*

*Condominiums, L.P., and 23S23 Construction, Inc. ("Second Amended Plan"), Article I,*

*¶ 1.37).* Significantly, the plan makes no further mention of the "Hunter Roberts

Litigation." However, the First Amended Disclosure Statement does. In a paragraph

labeled "Hunter Roberts Litigation," the First Amended Disclosure Statement provides:

> Debtors have recently evaluated the costs attendant to
> pursuing the Hunter Roberts Litigation as detailed herein. It
> is "guestimated" that the legal and expert fees to pursue the
> Hunter Roberts Litigation may be as high as $200,000 to
> $300,000. Insofar as these Debtors do <u>not</u> have sufficient
> funds to pursue the Hunter Roberts Litigation, Debtors will
> abandon this litigation in the bankruptcy proceedings
> pursuant to 11 U.S.C. ¶ 554.

*First Amended Disclosure Statement, Article IV(C)(4).*

The Second Amended Plan provided for a pro rata distribution of $50,000, to be

funded by Turchi, to creditors holding allowed general unsecured claims against 23S23.

*Second Amended Plan, Article VII(B)(3).* The general unsecured creditors of 23S23

voted to reject the plan. *Bankruptcy Case No. 09-12647, Docket Entry No. 224*

*(Debtors' Carriage House Condominiums, L.P. and 23S23 Construction, Inc., Report on*

*Voting on the Second Amended Plan at pg. 3.*

On March 24, 2010, 23S23 filed a motion for dismissal of its bankruptcy case

pursuant to 11 U.S.C. § 1112(b), alleging that: (i) the unsecured creditors had voted to

reject the joint plan of reorganization; (ii) Turchi was unwilling to increase his

contribution to the plan; (iii) it did not believe that it could propose a joint plan or any

plan that would be confirmable; and (vi) that it had no assets to support or justify a

liquidating plan.  *Bankruptcy Case No. 09-12647, Docket Entry No. 227.*  Objections to

the motion were filed.

On April 27, 2010, the Court held a hearing on 23S23's motion to dismiss.

*Bankruptcy Case No. 09-12647, Docket Entry No. 235.*    In light of the objections to

dismissing 23S23's bankruptcy case, the Court issued an Order, dated April 27, 2010,

converting it to a case under Chapter 7.  *See Bankruptcy Case No. 09-12647, Docket*

*Entry No. 238, Bankruptcy Case No. 09-12652, Docket Entry No. 39.*  Only <u>one</u> day

later, a Chapter 7 Trustee was appointed.  *Bankruptcy Case No. 09-12652, Docket*

*Entry No. 40.*   Moreover, by Order, dated May 13, 2010, the Court ruled that the

bankruptcy cases of Carriage House and 23S23 would no longer be jointly administered

but, instead, would thereafter be separately and individually administered.  *Bankruptcy*

*Case No. 09-12652, Docket Entry No. 42.*

On June 22, 2010, the Court issued an Order confirming a Third Amended Plan

filed solely on behalf of Carriage House.  *See Third Amended Plan for Debtor Carriage*

*House Condominiums ("Third Amended Plan"), Bankruptcy Case No. 09-12647, Docket*

*Entry No. 290.*  The Third Amended Plan is a pot plan with $450,000 being funded by

Turchi for allowed general unsecured claims. *Third Amended Plan VII(B)(3) & (C)(1)(b)*, *Bankruptcy Case No. 09-12647, Docket Entry No. 225.* One of the general unsecured claimants, Amalgamated Bank, as Trustee for Longview Ultra I Construction Loan Investment Fund ("Amalgamated"), has an allowed claim for $26,998,725.69. *Third Amended Plan at Article VII(B)(3).* According to the Third Amended Plan, the other allowed unsecured claims total $1,204,257.85. *Id.* Amalgamated agreed to cap its distribution on account of its claim to $320,000 which provides a balance of $130,000 for distribution to the remaining unsecured creditors with allowed claims. *Id.* According to the Third Amended Plan, the $130,000 will provide a distribution of approximately 10.5% to the aforementioned unsecured creditors. *Id.*

Under the definitions in the Third Amended Plan, National Glass and BVF hold or held disputed rather than allowed unsecured claims. *See id. at Article I, ¶ 1.27.* Payment of disputed claims, if any, are to be made from the "Disputed Claim Reserve." *See id. at Article I, ¶ 1.28.* Thus, resolution of their claims in the instant adversary proceeding is not intertwined with Carriage House's distribution to claimants with allowed unsecured claims.

Notably, the Third Amended Plan, like the debtors' previous joint plans, defined the Debtor Action against Hunter Roberts. *See Third Amended Plan, Article I, ¶ 1.37, Bankruptcy Case No. 09-12647, Docket Entry No. 225.* Otherwise the Third Amended Plan makes no reference to the action.

On July 1, 2010, the Chapter 7 Trustee began the § 341 meeting of creditors in 23S23's bankruptcy case. *Bankruptcy Case No. 09-12652, Docket Entry No. 47.* The meeting was continued to August 5, 2010, to enable the Chapter 7 Trustee to follow up

with records. *Id., Docket Entry 48.* On October 6, 2010, the Trustee filed a Notice of

Change from a No-Asset to an Asset case. *Id., Docket Entry No. 49.* There are only

three entries on the docket in 23S23's bankruptcy case after October of 2010. Two of

the entries are for transcripts of hearings held in connection with the instant adversary

proceeding. *See Bankruptcy Case No. 12652, Docket Entry Nos. 51 & 52.* The

Chapter 7 Trustee did not participate in either of these hearings. The only other entry

states: "Meeting of Creditors Held and Concluded on 2/24/10." Importantly, there has

been no court action taken by the Chapter 7 Trustee in 23S23's bankruptcy case.

As the debtors' bankruptcy cases were progressing, the adversary proceeding

was also continuing. Numerous discovery issues were raised.

On October 4, 2010, plaintiff, D'Andrea, and defendants, 23S23, Carriage

House, Turchi, Inc. and Turchi, filed a motion to dismiss stating, *inter alia*, that

"Defendants have reached a settlement agreement with Plaintiff and Plaintiff wishes to

dismiss its claims against the Defendants, <u>with</u> prejudice" but that the debtors wanted to

dismiss their third party claims against Hunter Roberts <u>without</u> prejudice since the

Debtor Action was still pending against Robert Hunters. *Motion to Dismiss (underlining

added), Adversary Proceeding No. 09-0120, Docket Entry No. 83.* Plaintiff, National

Metal, and defendants, 23S23, Carriage House, Turchi, Inc. and Turchi, filed a similar

motion to dismiss stating, *inter alia*, that "Defendants have reached a settlement

agreement with Plaintiff and Plaintiff wishes to dismiss its claims against Defendants

<u>with</u> prejudice" but that the debtors wanted to dismiss their third party claims against

Hunter Roberts <u>without</u> prejudice since the Debtor Action was still pending. *Motion to

Dismiss (underlining added), Adversary Proceeding No. 09-0120, Docket Entry No. 81.*

14

Daniel Dugan, Esquire ("Dugan"), signed both of these motions to dismiss on behalf of the "Defendants/Third Party Plaintiffs" despite no longer representing 23S23 which now had a Chapter 7 Trustee.  However, both of the motions state that the "Chapter 7 Trustee consents to the relief requested in the motion for dismissal."  *See Motions to Dismiss at ¶ 7, Adversary No. 09-0120, Docket Entry Nos. 81 & 83.*  Hunter Roberts objected to the motions because the claims against it were being dismissed <u>without</u> prejudice.  *See Objection of Third Party Defendant Hunter Roberts Construction Group, LLC, to Motion to Dismiss, Docket Entry No. 85.*  The motions to dismiss were subsequently withdrawn.  *See Docket Entry Nos. 88 & 89.*

On October 25, 2010, a motion for partial judgment on the pleadings was filed against BVF on behalf of 23S23, Carriage House, Turchi and Turchi, Inc.  *See Defendants' Motion for Partial Judgment on the Pleadings Against Plaiintiff Construction Co., Inc., Adversary Proceeding No. 09-0120, Docket Entry No. 86.*  The motion was filed by Dugan as "Counsel for Defendants" despite the fact that he had no authority to act on behalf of 23S23.  *Id.*  After a hearing on the motion for partial summary judgment, the Court issued an Order, dated November, 23, 2010, granting the dismissal of Counts X, XI, XII, XIII, and XIV of BVF's Second Amended Complaint but also granting BVF leave to file an amended complaint with respect to those counts.  *Id. at Docket Entry No. 96.*

On December 23, 2010, BVF filed its Third Amended Complaint.  *Third Amended Complaint, Docket Entry No. 110.*   The Third Amended Complaint does not contain Counts XII, XII and XIV from Second Amended Complaint but includes Counts X (fraud) and XI (piercing the corporate veil), as amended.  *Id.*  Importantly, the Third

15

Amended Complaint contains nearly <u>thirty</u> new paragraphs in the section labeled "Background." *Id.* Moreover, the allegations in Counts X and XI have been expanded, refined and clarified. *Id.*

The Third Amended Complaint alleges, *inter alia*, that Turchi engaged in a scheme to avoid paying BVF in full for its work on three different real estate construction projects. According to the allegations in the Third Amended Complaint, Turchi perpetrated this scheme by intentionally undercapitalizing and diverting funds from the corporate entities which he created to be the general contractors on each of the three construction projects (Walnut Construction, 1930-34 Corp., and 23S23). By forming a separate corporate entity for each real estate project, Turchi insulated himself from liability on the projects. Moreover, by undercapitalizing the corporate entities with whom BVF subcontracted and diverting funds therefrom, he ensured that the corporate entities, at least near the completion of the projects, were judgment proof. In the Amended Complaint, BVF further alleges that Turchi induced it to perform work on the new projects by promising that unpaid balances owed to it for the prior projects would be forthcoming which ultimately did not occur, resulting in damages to BVF of more than two million dollars.

In response to the Third Amended Complaint, Dugan filed a motion on behalf of "defendants," without specifically naming which defendants he was representing, requesting the dismissal of Counts X and XI of the Third Amended Complaint.[4] *See*

---

[4]  Dugan did indicate, by way of footnote 1 of the motion, that he was not bringing the motion on behalf of Carriage House. He stated that, since the Court had issued an Order, dated November 18, 2010, granting Carriage House's objection to BVF's proof of claim, Carriage House was "no longer a party to this action" and BVF "has no remaining

(continued...)

*Defendants' Motion to Dismiss Third Amended Complaint of Plaintiff BVF Construction*

*Co., Docket Entry No. 112.*  Nevertheless, based on the fact that 23S23 is in a Chapter

7 case and Carriage House expressly stated that it was abandoning any further

prosecution of the lawsuit, the only "defendants" upon whose behalf Dugan appears to

have filed the motion were Turchi and Turchi, Inc. Thus, the motion to dismiss and

opposition thereto constituted a dispute solely between a non-debtor plaintiff, BVF, and

non-debtor defendants, Turchi and Turchi, Inc.  However, the parties never raised this

issue with the Court.  Consequently, a hearing was scheduled and held on the motion

to dismiss.  Based on the motion, BVF's response thereto, the parties' oral argument

and a close review of the Third Amended Complaint, the Court concluded that Counts X

and XI of the Complaint should not be dismissed.  *See Order, dated February 10, 2011,*

*Docket Entry No. 116.*  On February 17, 2011, Turchi and Turchi, Inc. moved for

reconsideration of the Court's decision regarding Counts X and XI.  *See Defendants'*

*Motion for Reconsideration of Order Denying Defendant's Motion to Dismiss Third*

*Amended Complaint of Plaintiff BVF Construction Co, Inc. ("Motion for*

*Reconsideration"), Adversary Proceeding No. 09-120, Docket Entry No. 119.*

On March 3, 2011, the Court held a status hearing in the Adversary Proceeding.

While notice of the status hearing was sent to 23S23's Chapter 7 Trustee, *Adversary*

*Proceeding No. 09-0120, Docket Entry No. 118,* he failed to appear at the hearing,

---

[4](...continued)
claims against it." *Defendants' Motion to Dismiss Third Amended Complaint of Plaintiff
BVF Construction Co. at n.1, Docket Entry No. 112.* This statement by Dugan appears
to be inaccurate since the only Order, dated November 18, 2010, on the docket in the
Carriage House bankruptcy case is an Order sustaining Carriage House's objection to
Morris Black's proof of claim. *See Bankruptcy Case No. 09-12647, Docket Entry No.
304.*

thereby demonstrating yet again his lack of interest in defending 23S23 in this litigation and proceeding affirmatively on its behalf against third party defendant Hunter Roberts.

At the status hearing, the Court advised the parties that it had decided to remand the Morris Black Action and that, upon consideration of the developments in the debtors' bankruptcy cases and the adversary proceeding, that it was very strongly inclined to do the same with the Non-Debtor Actions. Dugan requested the Court to allow the parties some time to confer and determine whether there was any possibility of settling the litigation before the Court remanded it to the State Court. He also asked the Court to rule on the pending Motion for Reconsideration before the remand was ordered. The Court granted these requests. While the parties were unable to settle the litigation, a hearing was held on the Motion for Reconsideration and the matter was taken under advisement.

**Discussion**.

## I.  Motion for Reconsideration

Defendants, Turchi and Turchi, Inc., contend that the Court should reconsider its denial of their motion to dismiss BVF's claims for fraud in Count X and piercing the corporate veil in Count XI.  In support of their request for reconsideration, they cite to Local Rule of Civil Procedure 7.1(g) which, they assert, "allows a party to make a motion for reconsideration."  Motion for Reconsideration at 4.

### A.  Standard of Review

Reconsideration is made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9023 which provides, in pertinent part, that "Rule 59 F.R.Civ.P. applies in cases under the Code." Fed. R. Bankr. P. 9023.  A motion to alter or amend a judgment must be based on at least one of the following three grounds: (1) an

intervening change in controlling law; (2) new evidence not previously available; or

(3) the need to correct a clear error of law or fact or prevent manifest injustice. *See*

*North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995);

*Allen v. J.K. Harris & Co., 2005 WL 2902497, at *1 (E. D. Pa. Nov.2, 2005).* It "is not to

be used as a means to reargue matters already argued and disposed of or as an

attempt to relitigate a point of disagreement between the Court and the litigant." *Hill v.*

*Tammac Corp., 2006 WL 529044, at *2 (M. D. Pa. Mar. 3, 2006) (quoting Ogden v.*

*Keystone Residence, 226 F. Supp.2d 588, 606 (M. D. Pa.2002)).*

### B.    Analysis of Arguments Regarding Count X

Defendants contend that the Court committed a clear error of law by not

dismissing Count X, which asserts fraud against Turchi and Turchi, Inc., because: (1)

the claim rests on the implication that Turchi misappropriated construction proceeds for

his own personal use; (2) the claim duplicates BVF's contract claims for the same

alleged debts; (3) BVF has no standing to sue Turchi for bank fraud; and (4) the

complaint contains no allegations in support of BVF's fraud claim as against Turchi, Inc.

The Court shall address each of these arguments seriatim.

First, Count X of the Third Amended Complaint is based on the allegations that

Turchi engaged in a scheme to strip the corporate entities, with which BVF was

fraudulently induced to contract, of funds and assets to avoid paying BFV in full for its

services. The focus of the claim is not on what Turchi did with the funds which he

diverted but on the allegations that he intentionally engaged in actions designed to

render the corporate entities judgment proof.  Accepting the truth of these allegations

and viewing all inferences therefrom in the light most favorable to BVF, *see Eurofins*

*Pharma US Holdings v. Bioalliance Pharma SA, 623 F.3d 147, 158 (3d Cir. 2010)*

*(stating standard of review applicable to motions to dismiss)*; *Watson v. Haverford Township Police Department, 2011 WL 2200306, at *3 (E.D. Pa. June 6, 2011) (same)*, the Court concludes that BVF has alleged a plausible claim for fraud against Turchi.

Second, the fraud claim does not duplicate BVF's contract claims because the fraud claim is based on Turchi's conduct: (i) in inducing BVF to provide subcontractor services to another Turchi-created general contractor entity despite not having been paid in full for the work which BVF previously provided to a similar entity on a different project; and (ii) of stripping the Turchi-created general contractor entities of assets and funds so that, at the final stages of each of their projects, the entities were without funds or resources to pay BVF in full.  The alleged conduct constitutes a fraudulent scheme separate and apart from the contractual obligations which the Turchi-created general contractor entities allegedly breached in failing to pay BVF in full.

Third, BVF has not attempted to plead a claim for bank fraud so the defendants' contention that BVF needs standing to do so is frivolous. BVF has standing to allege the claims which it has set forth against Turchi and Turchi, Inc. in the Third Amended Complaint.

However, as to the defendants' fourth argument that Count X fails to state a claim of fraud against Turchi, Inc., the Court shall reconsider its Order.  The Third Amended Complaint alleges that Turchi was the president, agent and sole shareholder of Turchi, Inc.; however, the complaint fails to allege any other connection between Turchi, Inc. and any of the other defendant entities.  Moreover, the sole allegation in the Third Amended Complaint connecting Turchi, Inc., to the fraud claim is the allegation in

paragraph 147 that Turchi "acting either individually and/or as the authorized

representative of Turchi, Inc., made repeated, false representations to Vernon about

payment so as to induce Plaintiff to continue to perform carpentry services on

Defendant John J. Turchi, Jr.'s various construction projects." *Third Amended*

*Complaint ¶ 147.*   This allegation is insufficient to state a claim of fraud against Turchi,

Inc. under the standard of review for motions to dismiss.[5]   Therefore, Count X of the

Third Amended Complaint shall be dismissed as against Turchi, Inc..

### C.  Analysis of Argument Regarding Count XI

The defendants contend that the Court should reconsider its Order denying the

defendants' request to dismiss BVF's piercing the corporate veil claim because, at the

hearing on the Motion to Dismiss, the Court referred to an opinion, dated July 8, 2008,

which the state court issued ("State Court Opinion") in the Morris Black Action before

that litigation was removed to this Court.  Defendants assert that, while the State Court

Opinion "is not literally 'new' evidence," it was evidence that their counsel "was not fairly

on notice to argue." *Defendants' Motion for Reconsideration at 5.*  The Court rejects

this contention out of hand. While the Court made reference to the State Court Opinion

during the hearing on the Motion to Dismiss, the Court denied defendants' request to

dismiss Count XI of the Third Amended Complaint based on its own conclusion that

---

[5] Significantly, in its answer to the defendants' Motion for Reconsideration, BVF
did not include any argument in opposition to defendants' contention that Count X for
fraud should be dismissed a against Tuchi, Inc..  S*ee Plaintiff's Answer to Defendants'
Motion for Reconsideration of Order Denying Defendants' Motion to Dismiss Third
Amended Complaint of Plaintiff BVF Construction Co., Inc.*

Count XI states a claim for piercing the corporate veil against Turchi under the standard of review for motions to dismiss. Therefore, regardless of the substance of the State Court Opinion and the history of the Morris Black Action, this Court would have issued the same ruling.   Consequently, the Court denies the Motion for Reconsideration as to Count XI.

## II.  Equitable Remand

According to 28 U.S.C. § 1452(b), which is titled "Removal of claims related to bankruptcy cases," the court "to which such claim or cause of action is removed may remand such claim or cause of action on *any equitable ground*." *28 U.S.C. § 1452(b) (emphasis added).* This statutory provision "grants bankruptcy courts broad discretion to reroute civil proceedings to state court." *S & S Family Partnership v. Abruzzo (In re Abruzzo), 1999 WL 1271761, at *2 (Bankr. E.D. Pa. 1999).*  Moreover, a court may *sua sponte* raise the issue of equitable remand. *See Trusty v. Monument Street Funding (In re Trusty), 2007 WL 3274420, at 4 & n.17 (Bankr. E.D. Pa. Nov. 5, 2007)* (Frank, J.) (exercising "broad discretion accorded to the bankruptcy court under 28 U.S.C. § 1452(b)" to *sua sponte* remand adversary proceeding back to state court); *Texas Gulf Trawling Co., Inc. v. RCA Trawlers & Supply, Inc. (In re Ciclon Negro, Inc.), 260 B.R. 832, 837-39  (Bankr. S.D. Tex. 2001)* (raising issue of remand *sua sponte* pursuant to §1452(b)).  Pursuant to § 1452(b), this Court is *sua sponte* raising the issue of equitable remand of the Non-Debtor Actions.

## A.  Factors Relevant to Remand

The factors which courts typically consider in deciding whether equitable remand

is warranted include the following:

(1)     the effect on the efficient administration of the
bankruptcy estate;

(2)     the extent to which issues of state law
predominated;

(3)     the difficulty or unsettled nature of the
applicable state law;

(4)     comity;

(5)     the degree of relatedness or remoteness of the
proceeding to the main bankruptcy case;

(6)     the existence of a right to a jury trial; and

(7)     prejudice to the involuntarily removed party.

*Lichtenfels v. Electro-Motive Diesel, Inc., 2010 WL 653859, at \*10 (W.D. Pa. Feb. 22,*

*2010).*  The Court applied these factors in denying Hunter Roberts' Motion on July 30,

2009.  However, since that time, there have been significant developments in the

debtors' bankruptcy cases.  These developments directly impact the issue of equitable

remand of the Non-Debtor Actions included in this adversary proceeding.

### B.     Consideration of Factors in Determining
Whether to Remand the Non-Debtor Actions
In View of the Current Status of the Debtors'
Bankruptcy Cases and the Non-Debtor Actions

Carriage House has a confirmed Chapter 11 plan that provides a pot of

$130,000 for distribution to creditors, other than Amalgamated Bank, with allowed

unsecured claims.  The plan provides for the implementation of a "Disputed Claims

Reserve" for payments to creditors with "Disputed Claims," such as National Glass and

23

BVF.  Moreover, since D'Andrea failed to file a proof of claim in Carriage House's bankruptcy case, D'Andrea will not be entitled to any distribution from Carriage House even if D'Andrea is successful in obtaining a judgment in its pre-petition lawsuit against Carriage House. Consequently, the Non-Debtor Actions will have little to no impact on the efficient administration of Carriage House's bankruptcy case.  For the same reasons, the Non-Debtor Actions are more remote than related to Carriage House's bankruptcy case.

Since the Court's ruling on Hunter Robert's Motion, Debtor 23S23's bankruptcy case was converted to a Chapter 7 case.  The Chapter 7 Trustee has shown a lack of interest in the instant adversary proceeding.  The record contains no evidence that he has taken any action on his own to resolve this litigation or that he has any intention of doing so.  Moreover, despite notice, he failed to appear at the status hearing held in this adversary proceeding on March 3, 2011.  With no indication that there will be any distribution (or any distribution in the near future) to 23S23's creditors, resolution of the Non-Debtor Actions will have no impact on the efficient administration of 23S23's bankruptcy estate.  For the same reasons, the Non-Debtor Actions are remote rather than closely related to 23S23's bankruptcy case.

All of the claims in the Non-Debtor Actions involve state law.  In addition, the primary focus of the Non-Debtor Actions has become the liability, if any, of non-debtor defendants, Turchi and/or Turchi, Inc., to the non-debtor plaintiffs.  Since the Non-Debtor Actions involve state law and are predominantly a dispute among non-debtor parties, considerations of comity weigh in favor of returning these lawsuits to the state court.  *See Peabody Landscape Construction, Inc. v. Schottenstein, 371 B.R. 276, 281*

*(S.D. Ohio 2007)* (*quoting In re Casamont Investors, Ltd., 196 B.R. 517, 524 (9th Cir. 1996))* ("Comity is a concept that means that 'all else being equal, state issues out to be decided by state courts.'").

Thus, upon considering the factors relevant to equitable remand in light of the current status of the debtors' bankruptcy cases and the Non-Debtor Actions, this Court concludes that the factors weigh heavily in favor of remand.  In light of this conclusion, the Non-Debtor Actions shall be remanded to the state court.

### III.  The Debtor Action

In the First Amended Disclosure Statement, the Debtors stated that they had insufficient funds to pursue the Debtor Action and would abandon it pursuant to 11 U.S.C. § 554.  While Carriage House's Third Amended Plan mentions the litigation, all it does is define it.  Taking Carriage House at its word, Carriage House does not intend to pursue the Debtor Action against Hunter Roberts.  However, 23S23's bankruptcy case was converted after the First Amended Disclosure Statement was approved. Therefore, the Chapter 7 Trustee may have a different view of whether to pursue the Debtor Action than that stated in the First Amended Disclosure Statement.  However, there has been no indication to the Court that the Chapter 7 Trustee has any intention of pursuing the Debtor Action.  Consequently, the Court shall retain rather than remand the Debtor Action with an eye towards bringing the matter to a swift end.

Moreover, since the Chapter 7 Trustee concluded the meeting of creditors in 23S23's bankruptcy case, he has not filed anything of record with the Court and has made no effort to advise the Court of his intentions with regard to the case.  To remedy this situation, the Court shall schedule a Show Cause Hearing requiring the Chapter 7

25

Trustee to appear and advise the Court of the current status of 23S23's bankruptcy case.

## SUMMARY

The Motion for Reconsideration shall be denied except as to Count X, which shall be dismissed as to Turchi, Inc. but not as to Turchi.  The Non-Debtor Actions shall be equitably remanded to the state court pursuant to 11 U.S.C. § 1452(b) since the factors relevant to remand weigh heavily in favor of doing so.  The Debtor Action shall not be remanded.  Instead, the Court shall schedule a Show Cause Hearing in the bankruptcy case of 23S23, requiring the Chapter 7 Trustee to appear and explain the status of the Chapter 7 case.  An Order to this effect follows.

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: June 22, 2011